BETTY ANZALONE et al., Appellants, v STATE FARM MUTUAL INSURANCE COMPANY, Appellant, and INSURANCE COMPANY OF NORTH AMERICA, Respondent, et al., Defendants.

Second Department, March 14, 1983

APPEARANCES OF COUNSEL

*Nigro, D'Anna & Utrecht, P. C. (Michael A. Haskel* of counsel), for appellants.

*Diamond, Rutman & Costello (Bertram Herman* of counsel), for appellant.

*Gerard A. Gilbride, Jr. (Diane K. Farrell* of counsel), for respondent.

OPINION OF THE COURT

*Per Curiam.*

In this action, plaintiffs, Peter and Betty Anzalone, seek a declaration that the automobile liability policy issued to defendant Ellen Steed by defendant Insurance Company of North America (INA), was in effect on July 18, 1979 when

Steed's car collided with that of plaintiffs. INA defends with the claim that Steed's policy was canceled before the accident because she defaulted in her payment of premium installments to the Broadway Bank & Trust Company (the Bank) which had financed the premium. Trial Term conducted an evidentiary hearing and decided that the Bank had indeed canceled the policy prior to the accident. Plaintiffs and their own insurer, defendant State Farm Mutual Insurance Company, now appeal, claiming INA failed to prove (1) that Steed signed the premium finance agreement which contained a power of attorney authorizing the Bank to cancel the policy, (2) that the cancellation notice was mailed to Steed, and (3) that Steed defaulted in the payment of premium installments. The appellants also allege that the cancellation was ineffective because Steed was overcharged by the Bank and because it did not return the unearned premiums.

To avoid liability under its policy, INA had the burden of proving cancellation in strict compliance with section 576 of the Banking Law (see *Savino v Merchants Mut. Ins. Co.,* 44 NY2d 625; *Viuker v Allstate Ins. Co.,* 70 AD2d 295). A premium finance company has the right to cancel the policy it has financed but only if the right is contained in the finance agreement (*Matter of Sweers v Malloy,* 28 AD2d 955). On this record — and in the absence of any denial from Steed or any contrary evidence (see *Welde v Wolfson,* 32 AD2d 973; Fisch, New York Evidence [2d ed], § 103) — the authenticity of Steed's signature on the finance agreement may be reasonably inferred from the fact that she paid at least five premium installments (see *People v Manganaro,* 218 NY 9; *People v Dunbar Contr. Co.,* 215 NY 416; *People v Winley,* 105 Misc 2d 474; 7 Wigmore, Evidence [Chadbourn rev, 1978], § 2131; Richardson, Evidence [Prince, 10th ed], § 636).

Proof that the cancellation notice was mailed to Steed was insufficient, however. Bernadette Sudenko, an officer of the Bank in charge of the financing of insurance premiums, testified that the Bank's cancellation notices are produced by computer and placed in envelopes by a clerk who later delivers groups of envelopes to the post office and returns with a mailing sheet stamped by the post office. A

mailing sheet, apparently so stamped, and containing 19 names, including Steed's, was received in evidence. Sudenko's testimony demonstrated an office practice and policy followed by the Bank in the regular course of its business (see *Nassau Ins. Co. v Murray,* 46 NY2d 828). But the office practice "must be geared so as to ensure the likelihood that a notice of cancellation is always properly addressed and mailed." (*Nassau Ins. Co. v Murray, supra,* p 830.) When reliance is placed on a mailing sheet, there must be testimony that an employee normally checks the names and addresses on the envelopes with those on the mailing sheet (*Ackler v Nationwide Mut. Ins. Co.,* 87 AD2d 730; *Manning v Boston Old Colony Ins. Co.,* 48 AD2d 838; *Caprino v Nationwide Mut. Ins. Co.,* 34 AD2d 522). Since Sudenko failed to provide such testimony, INA failed to establish that a cancellation notice was mailed to Steed.

Proof that Steed was in default in the payment of any premium installment also was deficient. Sudenko testified that the Bank's computer automatically generates a cancellation notice when there is a default in payment, but she produced no record of Steed's payment history. This failure violates the best evidence rule which requires the production of the original writing or that its absence be satisfactorily accounted for (see *Mahaney v Carr,* 175 NY 454; *Butler v Mail & Express Pub. Co.,* 171 NY 208; Richardson, Evidence [Prince, 10th ed], § 568). Moreover, even though computer printouts of Steed's payment record might have been admissible in evidence under the business entry exception of the hearsay rule had a proper foundation been laid (see CPLR 4518; *Guth Realty v Gingold,* 34 NY2d 440, 451), here, no record was offered. Sudenko's testimony concerning Steed's default was inadmissible hearsay.

Although the Bank apparently overcharged Steed in violation of subdivision 4 of section 568 of the Banking Law — a fact which might require a forfeiture of all charges under the premium finance agreement — plaintiffs have not demonstrated that the overcharge was committed knowingly (see Banking Law, § 563). As explained by the Bank, the error occurred because its computation formula did not account for the fact that, in Steed's case, the finance agreement related to insurance coverage which

commenced prior to execution of the agreement and therefore two installments, totalling $50.02, were erroneously treated as part of the amount financed instead of as part of the down payment. In light of our conclusions, it is unnecessary to reach the question of whether the Bank's failure to return Steed's unearned premiums defeated the cancellation.

In sum, the failure to establish cancellation and premium default mandates reversal and a declaration that the policy issued by INA was in full force and effect on the date of the accident.

LAZER, J. P., GIBBONS, NIEHOFF and BOYERS, JJ., concur.

Judgment of the Supreme Court, Queens County, dated July 31, 1981, reversed, on the law, with costs, and it is declared that the policy of insurance issued to defendant Ellen Steed by defendant Insurance Company of North America was in full force and effect on July 18, 1979.