## In re Randy L. WATTS, Debtor.

### Bankruptcy No. 91–40055–W–13.

United States Bankruptcy Court, W.D. Missouri.

Sept. 24, 1991.

Frank E. Brown, Kansas City, Mo., for debtor.

Marilyn Gussman, Kansas City, Mo., for GMAC.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

Debtor filed his petition for relief under Chapter 13. One of his assets was a 1988 Chevrolet Silverado Pickup. One of his creditors was GMAC, which claimed a lien on the pickup because it had purchased debtor's note and the security agreement securing that note from Molle Chevrolet, the original seller of the vehicle. GMAC had duly perfected its security interest. Molle Chevrolet had also sold debtor credit life insurance at a cost of $633.20, accident and health insurance at a cost of $992.13, and an extended warranty or service contract at a cost of $699.00. Debtor owed GMAC $12,611.24 and GMAC claimed that the value of its collateral was $13,527.00 meaning that GMAC applied for interest and attorney fees as an oversecured creditor. Debtor, conversely, disputed the value.

■ The parties have now stipulated that the fair market value of the 1988 pickup alone is $11,213.00. However, GMAC wishes to add the costs of the insurance, and service policy ($2,324.41) to the fair market value of the vehicle to establish the value to determine secured status. In other words, can GMAC piggyback the cost of the extras it has paid for in purchasing said note and security agreement onto the bare value of the unadorned collateral.

■ The first issue would seem to be then whether GMAC had a security interest in the insurance premiums and the service contract, as well as the vehicle. Looking to the security agreement or installment sales contract, the following words are included:

"Security interest. You are giving the creditor a security interest in the vehicle being purchased and any accessories, equipment and replacement parts installed in the vehicle. The security interest also covers (1) insurance premiums and charges for service contracts returned to

the creditor (2) proceeds of any insurance policies or service contract on the vehicle and (3) proceeds of any insurance policies on your life or health which are financed in this contract. This secured payment of all amounts you owe in this contract and in any, transfer, renewal, extension or assignment of this contract. It also secures your other agreements in this contract".

The same document also provides:

"Optional Insurance or Service Contracts. This contract may contain charges for optional insurance or service contracts. If the vehicle is repossessed, you agree that the creditor may claim benefits under these contracts and terminate them to obtain refunds for unearned charges".

Those words are sufficient to establish a security interest in the insurance policies, insurance premiums (including unearned) and service contracts. Strangely, it appears that nothing more than the creation of the security interest in the unearned insurance premiums is required to perfect that interest. V.A.M.S. 400.9–104(g) specifically excepts "... a transfer of an interest or claim in or under any policy of insurance ...". While the Court has found neither a Missouri state court decision nor a bankruptcy court decision from either the western or eastern district of Missouri, the majority of bankruptcy courts considering the issue have so ruled. See *Matter of Rogers*, 6 B.R. 472 (Bkrtcy.S.D.Ia.1980), *In re Cooper*, 104 B.R. 774 (Bkrtcy.S.D.W.Va.1989), *In re RBS Industries*, 67 B.R. 946 (Bkrtcy. D.Conn.1986) and other cases cited therein. Neither Missouri statutory law nor case law requires any steps to create an enforceable lien on said items.

Debtor suggests in his brief that debtor does not want the add ons and gratuitously awards GMAC the right to cancel the add ons. Unfortunately, GMAC has no ability to cancel these without default on the part of debtor. Debtor may cancel these add ons if he desires but the funds realized from the insurance cancellation shall be the property of GMAC, and debtor will be responsible for any diminution in value thereof from the date debtor filed until the date debtor cancels and stops the attrition of the unearned premiums.

A somewhat different situation might apply to the service contract. However, both sides treat the service contract as though it were identical to the insurance policies. Therefore, the Court will likewise treat it as being of the same genre. Debtor may cancel the service contract. The refund will belong to GMAC. Debtor will be responsible for any diminution in value from the date of filing to the date of cancellation. GMAC's claim will be allowed, as secured, for the value of the vehicle plus the cancellation value of the insurance and extended coverage as of the date of filing.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under rule 7052, Rules of Bankruptcy.

SO ORDERED.