**In re Helen J. SMITH, Debtor.**

**In re Willie B. HOLLIDAY and Barbara Holliday, Debtors.**

**Bankruptcy Nos. 93–40206–399, 93–40896–399.**

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

May 13, 1994.

Howard S. Smotkin, Riezman & Blitz, P.C., St. Louis, MO.

John V. LaBarge, Jr., St. Louis, MO, Trustee.

## MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER, Bankruptcy Judge.

### INTRODUCTION

These two unrelated cases each concern the extent to which a security agreement, entered into when an automobile was purchased, also covers unearned premiums for credit life insurance and an extended service agreement.

### JURISDICTION

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" which the Court may hear and enter appropriate judgments pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (K), & (O).

### STATEMENT OF FACTS

*I. Willie B and Barbara Holliday*

Willie B. Holliday and Barbara J. Holliday (the "Hollidays") purchased a 1991 Chevrolet Camaro and obtained financing from General Motors Acceptance Corporation ("GMAC"). As part of this same transaction, the Hollidays purchased and, financed through GMAC, credit life insurance and an extended

service warranty on the automobile. The Hollidays signed a Retail Installment Sale Contract which states in bold type on the front page:

> See the other side of this contract for other important agreements, including your agreement to give the Creditor a security interest in insurance premiums and proceeds.

The contract also states:

> Security Interest. You give the Creditor a security interest in (1) the vehicle being purchased, (2) any accessories, equipment and replacement parts installed in the vehicle, (3) **any insurance premiums** and charges for **service contracts** returned to the Creditor, (4) any **proceeds of insurance policies or service contracts** on the vehicle, and (5) any **proceeds of insurance policies** on your life or health which are financed in this contract. This secures payment of all amounts you owe in this contract and in any transfer, renewal, extension or assignment of this contract. It also secures your other agreements in this contract. (Emphasis added in body of paragraph)

GMAC filed a proof of claim which treated the amount owed for credit life insurance and the service agreement as a secured debt, claiming that the value of its collateral included the automobile as well as the credit life insurance and the service agreement. The Hollidays objected to GMAC's claim, contending that the collateral was the fair market value of the automobile.

### II. Helen J. Smith

Helen J. Smith ("Smith") purchased a 1991 Chrysler LeBaron and obtained financing from Chrysler Credit Corporation ("Chrysler"). As part of this same transaction, Smith purchased and, financed through Chrysler, a Chrysler Motors service contract for the automobile. Smith signed a Retail Installment Sale Contract which states:

> Buyer grants and Creditor shall have a Security Interest, as the term is defined in the Uniform Commercial Code of the state

in which this contract is executed, in the property and the proceeds thereof, including any accessions to the property, in any premium rebates from insurance or **service contracts financed hereunder,** in the proceeds of any insurance on the property, and in the proceeds of any credit life and/or accident and health insurance financed hereunder, until all amounts due under this contract are paid in full. (emphasis added).

Chrysler objected to the confirmation of Smith's plan contending that the plan did not propose to pay for the service contract. Chrysler asserts it status as a secured creditor holding both the automobile and the service contract as collateral.

### DISCUSSION

Both GMAC and Chrysler (collectively "Creditors") assert that their security interests extend to the Smith's and Hollidays' (collectively "Debtors") vehicles and also to those additional items, the insurance and/or the service agreement, purchased at the time of sale. Creditors argue that these debts should be treated as secured debt in the Debtors' Chapter 13 bankruptcy plan because their collateral includes the insurance and the service policies.

### I. The Creditors have a security interest in the insurance and service policies.

There are no precise words which are required to convey a security interest, *see* Mo.Ann.Stat. § 400.1–201(37) (Vernon 1994), however, there must be some language in an agreement which actually conveys a security interest. *Shelton v. Erwin,* 472 F.2d 1118, 1120 (8th Cir.1973); *Bradley v. K & E Investments, Inc.,* 847 S.W.2d 915, 921 (Mo.App.1993).[1] Courts which have examined this identical issue have found an installment contract which contains a detailed statement as to the nature and extent of the security interest is sufficient to create a security interest in credit life insurance and an

---

1. Under Article 9 of the Uniform Commercial Code, an enforceable security interest requires: (1) a signed agreement which describes the collateral; (2) the giving of value; and (3) the debtor obtaining rights in the collateral. Mo.Ann. Stat. § 400.9–203 (Vernon 1994). Although the collateral at issue in this Case may not fall within scope of Article 9, it is clear from the facts that there is an enforceable security interest if Article 9 were to apply.

extended warranty. *In re Watts*, 132 B.R. 31, 32 (Bankr.W.D.Mo.1991).

The Retail Installment Contract signed by the Hollidays details the items which comprise the security interest. It specifically covers service contracts and insurance policies. One paragraph was titled in bold face type **Security Interest** and the Hollidays each signed the Retail Installment Contract in two different places. Such explicit language in the signed contract is sufficient to create a security interest in the insurance policy and service agreement.

The Retail Installment Contract signed by Smith is also very specific. On the front of the contract above the signature line, are words delineating the extent of the security interest. Here "service contract" is mentioned as being part of Chrysler's security interest and again Smith's signature lies just above the line describing the security interest. Such precise language and actions cannot be ignored.

■ There is no Missouri law which explains how a creditor perfects a security interest in insurance. Insurance is excluded from the scope of Article 9 of the Uniform Commercial Code as it is adopted in Missouri, Mo.Ann.Stat. § 400.9–101 to § 400.9–507 (Vernon 1994).[2] There is case law, however, which suggests that an interest in insurance is perfected merely upon the contractual creation of the security interest.

The bankruptcy court in *In re Watts*, found that "nothing more that the creation of the security interest in the unearned insurance premiums is required to perfect that interest." 132 B.R. at 32. Furthermore, other bankruptcy courts have ruled the same way, *see e.g. In re Cooper*, 104 B.R. 774, 775 (Bankr.S.D.W.Va.1989) ("a purchase money security interest may be created in unearned premiums.") This Court will follow those courts which hold that an interest in insurance premiums and, here, service agreements, can be perfected merely by creating a security interest. The Retail Installment Contracts, signed at the time of purchase, with the Debtor's subsequent rights in the automobile is sufficient to perfect the Credi-

tors' interest in the insurance premiums and service agreements.

## II. *The Treatment of the Creditors Claims in Chapter 13.*

■ The filing of a bankruptcy petition changes the status of a secured debt by treating it as secured only to value of the collateral. Section 506(a) of the Bankruptcy Code states: "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ..." 11 U.S.C. § 506(a).

Certainly the credit life insurance policy and the service agreement benefit the Debtors' estates. Each operates to increase the value of the Creditors' claims and each has a value independent of the automobile. Thus, under § 506(a), the Creditors have an allowed secured claim for these items to their respective values.

The value of the insurance premiums and service contracts was not briefed by the parties. In the *Watts* case, the court found that GMAC's claim should be allowed as secured for the value of the automobile, plus the cancellation value of the insurance and the value of the extended warranty coverage as of the date of filing the bankruptcy petition. 132 B.R. at 32. This Court is persuaded by the *Watts* decision and finds no reason to alter the valuation ascribed to the insurance and extended warranty coverage.

## CONCLUSION

For the foregoing reasons

IT IS ORDERED that Debtors, Willie B. and Barbara Holliday's Objection to the Claim of GMAC is DENIED with GMAC's claim being treated as secured for the value of the automobile, plus the value of the insurance and the extended warranty.

IT IS FURTHER ORDERED that Chrysler Credit Corporation's Objection to Confirmation of Debtor, Helen J. Smith's, Plan is SUSTAINED, and the Debtor shall have 20 days in which to file an Amended Plan which

---

**2.** Section 400.9–104(g) states: "[t]his article does not apply to a transfer of an interest or claim in or under any policy of insurance."

treats Chrysler Credit Corporation's claim in a manner consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the insurance policy and extended warranty/service agreements should be valued in a manner consistent with *In re Watts*, 132 B.R. 31 (Bankr.W.D.Mo.1991), unless either party requests further hearing on this matter within 10 days from the date of this Memorandum Opinion and Order.