OPINION OF THE COURT
Howard Miller, J.
Petition to stay arbitration is granted and arbitration under the uninsured motor vehicle provisions of the policy issued by petitioner to respondent Maryanne Rollo is permanently stayed.
Petitioner commenced this proceeding to stay arbitration sought by its insured, respondent Maryanne Rollo, under the uninsured motorist endorsement of the policy, with respect to injuries sustained by Ms. Rollo in an accident on December 13, 1994. Petitioner contends that the tortfeasor, Christine A. Harper (Harper), was in fact insured on the date of the ac *632 cident by American Home Assurance Company (American) and thus respondent Rollo is not entitled to benefits under the uninsured motorist endorsement.
At the hearing held February 28, 1997, petitioner submitted a police accident report and Department of Motor Vehicles form DP-37 (registration plate record) indicating American as Harper’s insurer during certain specified periods.
Naomi Rachel Tomlins, testifying on American’s case, stated that she was employed as an assistant general manager in the marketing department of the Premium Payment Plan (Premium) since July 1994. Premium is a premium finance agency, as that term is defined in Banking Law § 554 (7). The American policy was issued to Harper under the Assigned Risk Plan. The premium finance agreement between Premium and Harper contains a limited power of attorney which permits Premium to cancel an insurance policy on Harper’s behalf.
According to Ms. Tomlins, Harper failed to pay the premium due June 14, 1994 and on June 20, 1994 a "Notice of Intent to Cancel” was sent to Harper, requiring payment by July 3, 1994 of $142.56. Ms. Tomlins testified that no proof of mailing was available, since it was not required. No payment having been received by July 6, 1994, a "Notice of Cancellation” was sent to Harper on that date, indicating the insurance policy was cancelled effective 12:01 a.m. on July 6, 1994. The "Notice of Cancellation” did not contain a statement that the insured has the right to have the cancellation notice reviewed by a Committee of the Assigned Risk Plan. Offered into evidence was a computer sheet entitled "Cancellation Notices Mailed 7/05/ 94”, stamped by the post office, showing Harper’s name and address.
When, as in this case, a premium finance agreement permits the premium' finance agency to cancel any insurance contract, cancellation must be effected in the manner prescribed by Banking Law § 576, and American bears the burden of establishing strict compliance with the statutory notification requirements (L.Z.R. Raphaely Galleries v Lumbermens Mut. Cas. Co., 191 AD2d 680, citing Savino v Merchants Mut. Ins. Co., 44 NY2d 625; Sea Ins. Co. v Kopsky, 137 AD2d 804; Anzalone v State Farm Mut. Ins. Co., 92 AD2d 238).
The only testimony with respect to the mailing of the notice of intent to cancel was that the notices are printed on "self-mailers” and taken to the post office by a Steven Sigler, who did not testify. Of greater significance, however, is the failure of the notice of cancellation to contain the statement that the *633 insured, has a right to a review of the cancellation by the Committee of the Assigned Risk Plan and the address to which the request for review should be directed as required by section 19 of the New York Automobile Insurance Plan.
In 1987, the Appellate Division, Second Department, in Roth v Aetna Life & Cas. Ins. Co. (128 AD2d 514), held that a cancellation notice sent by a premium finance agency which does not notify the insured of a right to review of the cancellation by a Committee of the Assigned Risk Plan is ineffective. Respondent American contends that an amendment adopted by the New York Automobile Insurance Plan effective October 20, 1992, and a subsequent Fourth Department decision in Aetna Cas. & Sur. Co. v Preisigke (139 AD2d 900) have abrogated the Roth ruling.
The 1992 amendment to the New York Automobile Insurance Plan upon which respondent American relies is contained, not in section 19 dealing with the right of review and appeal, but in section 18 dealing with cancellations, and states as follows: "5. Cancellation of a policy under a Premium Finance Agreement shall be on a pro-rata basis subject to a minimum earned premium on the policy of ten percent of the gross premium or $60, whichever is greater. An insured has no right of review of such action by the Governing Committee of the Plan.”
The first sentence of section 18 (5) is obviously intended to reflect the 1991 amendment to Banking Law § 576, which amended subdivision (1) (f) with respect to the amount of refund due the insured upon cancellation. The second sentence, relating to the right of review "of such action”, would thus appear to apply, not to the right of review of the cancellation itself, but of the right of review of the amount of the earned premium refund.
While counsel for both parties were offered an opportunity to submit any underlying information with respect to the 1992 amendment to the New York Automobile Insurance Plan, or to provide the court with the New York Automobile Insurance Plan provisions as they existed at the time the Roth decision (supra) was rendered, they have not done so.
Although the court is persuaded that the equities would appear to favor the holding in the Aetna case (supra), the Roth case (supra) is binding authority on this court until the Second Department itself, or the Court of Appeals, pronounces a contrary rule (Mountain View Coach Lines v Storms, 102 AD2d 663). Thus the failure of the notice of cancellation to contain *634 the notice prescribed by the New York Automobile Insurance Plan § 19 rendered the notice ineffective to cancel the insurance.