**In re Mary E. GRANT, Debtor.**

**Bankruptcy No. 99–11641–JMD.**

United States Bankruptcy Court,
D. New Hampshire.

Dec. 7, 1999.

Grenville Clark III, Gray, Wendell & Clark, P.C., Manchester, NH, for debtor.

Edward C. Dial, Jr., David C. Dunn, Law Offices of Joseph F. McDowell, III, P.A., Goffstown, NH, for Chrysler Financial Corp.

Lawrence P. Sumski, Amherst, NH, Chapter 13 Trustee.

## MEMORANDUM OPINION
## AND ORDER

J. MICHAEL DEASY, Bankruptcy Judge.

## I. INTRODUCTION

The Court has before it the objection of Chrysler Financial Corp. ("Chrysler") to confirmation of the Debtor's Chapter 13 plan. The Court held a hearing on confirmation and Chrysler's objection to confirmation on November 19, 1999. After the Debtor and Chrysler presented argument, the Court took the matter under advisement.

The Court has jurisdiction of this subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS

The Debtor's Chapter 13 plan contains the following provision:

> The loan secured by a first security interest in the debtor's 1997 Hyundai Elantra automobile is recast to a loan having an original principal amount of $7,165, that being the replacement value of the automobile. This recast loan is to be paid in sixty monthly installments by the chapter 13 trustee in the amount of $145.28 each, which installments carry interest calculated at an annual rate of 8.0% on the unpaid balance. Upon payment of the recast loan in full, the secured creditor shall release its lien on the automobile that serves as collateral.

Chapter 13 Plan Dated October 25, 1999. Chrysler filed an objection to its proposed treatment under the plan on three grounds. First, Chrysler objects to the value used by the Debtor for her car. Second, Chrysler objects to the interest rate being paid on its claim during the life of the plan. Third, Chrysler objects to the Debtor's failure to include the cancellation value of the Debtor's extended warranty service contract and the unearned premium for the credit life insurance and credit accident and health insurance, purchased by the Debtor and financed by Chrysler at the time the Debtor bought her car, as part of its secured claim.

Prior to the hearing, the parties stipulated to the value of the automobile and to an interest rate during the life of the plan. The parties also agreed that for purposes of Chrysler's objection to confirmation, the cancellation value of the extended warranty service contract is $375.00, the unearned premium for the credit life insurance is $78.82, and the unearned premium for the credit accident and health insurance is $131.69, for a total of $585.51. The parties continue to disagree, however, as to whether Chrysler has any security interest in such cancellation value or unearned premiums and whether such values should be added to Chrysler's secured claim for purposes of confirmation.

## III. DISCUSSION

### A. Legal Issues

■ The Debtor's treatment of Chrysler's secured claim is governed by 11 U.S.C. § 1325(a)(5).

Under this provision, a plan's proposed treatment of secured claims can be confirmed if one of three conditions is satisfied: the secured creditor accepts the plan, see 11 U.S.C. § 1325(a)(5)(A); the debtor surrenders the property securing the claim to the creditor, see § 1325(a)(5)(C); or the debtor invokes the so-called "cram down" power, see § 1325(a)(5)(B). Under the cram down option, the debtor is permitted to keep the property over the objection of the

creditor; the creditor retains the lien securing the claim, *see* § 1325(a)(5)(B)(i), and the debtor is required to provide the creditor with payments, over the life of the plan, that will total the present value of the allowed secured claim, i.e., the present value of the collateral, *see* § 1325(a)(5)(B)(ii). The value of the secured claim is governed by ·§ 506(a) of the Code.

*Assocs. Commercial Corp. v. Rash,* 520 U.S. 953, 956–57, 117 S.Ct. 1879, 1882–83, 138 L.Ed.2d 148 (1997). The parties have agreed that the value of the car is $7,165.00 and that interest should be paid at the rate of 8% per annum during the term of the plan. Chrysler will retain its lien on the car until the recast loan is paid in full. Accordingly, the Debtor's plan is confirmable with respect to Chrysler's secured claim in the automobile because the secured creditor has accepted the treatment provided by the plan. *See* 11 U.S.C. § 1325(a)(5)(A). However, Chrysler has not accepted the terms of the plan with respect to its secured claim in the value of the extended warranty service contract, the credit life insurance, and the credit accident and health insurance. Under the plan, the Debtor seeks to retain the warranty contract and credit insurance policies based upon her view that Chrysler has no secured claim in the policies themselves.

At issue is whether Chrysler has a security interest in the extended warranty service contract and the credit insurance, such that she is required to pay to Chrysler their present value through her Chapter 13 plan. The retail installment contract signed by the Debtor on April 24, 1997 provides in relevant part:

**Security Interest.** You grant to Creditor a security interest in the Vehicle being purchased, including any accessories, equipment and replacement parts installed in the Vehicle, and the proceeds thereof. *You also grant to Credi-*

*tor a security interest in and agree to assignment of any money received by Creditor as proceeds, rebate or refund of, credit insurance premiums or service contract charges financed in this contract due to cancellation or termination.* You further agree that any such money received may be applied by Creditor to the unpaid balance of this contract.

Retail Installment Contract Dated April 24, 1997 (emphasis supplied). The retail installment contract contains no other language that can be construed as providing Chrysler with any additional security or rights with respect to the extended warranty service contract or the credit insurance. Upon default Chrysler has the right to accelerate the amounts due under the contract and to repossess the Debtor's car.

The retail installment contract between the Debtor and Chrysler, by its terms, is governed by New Hampshire law. Under New Hampshire law the warranty service contract is considered to be a contract of insurance. *See* RSA 407–A:2. Accordingly, the "cancellation value" of the warranty service contract is legally indistinguishable from the unearned premiums on the credit life and credit accident and health insurance contracts. For that reason the extended warranty service contract, the credit life insurance contract, and the credit accident and health contract shall be collectively referred to as the "Insurance Contracts."

Insurance "premium finance agreements" and "insurance premium finance companies" are subject to regulation by the insurance commissioner. *See* RSA 415–B:1–13. The retail installment contract between the parties, to the extent that it financed the payment of the premiums on the Insurance Contracts, is a "premium finance agreement." *See* RSA 415–B:1(V). Pursuant to New Hampshire law, "[n]o filing of the premium finance agree-

ment shall be necessary to perfect the validity of such agreement as a secured transaction as against creditors, subsequent purchases, pledges, encumbrances, successors, or assigns." RSA 415–B:11.

The Debtor argues that under the retail installment contract she granted a security interest in the Insurance Contracts *only* to the extent that there are proceeds, rebates or refunds arising from the cancellation or termination of such contracts. According to the Debtor, as long as the Insurance Contracts are not canceled or terminated, Chrysler has no present security interest in the Insurance Contracts themselves or in any unearned premiums. Chrysler argues, on the other hand, that it possesses a security interest in the Insurance Contracts and the unearned premiums even if they are not canceled or terminated but rather simply maintained.

### B. Analysis

In support of its position Chrysler has cited *In re Smith,* 167 B.R. 895 (Bankr. E.D.Mo.1994), *In re Watts,* 132 B.R. 31 (Bankr.W.D.Mo.1991), and *In re Cooper,* 104 B.R. 774 (Bankr.S.D.W.Va.1989). In each case, the debtors purchased various insurance and extended warranty coverage at the time they bought their automobiles. In each case, the debtors signed a retail installment contract that contained a section entitled "security interest," which purported to grant the creditor a security interest in insurance premiums and service contract charges. In each case, the courts found that the creditor had a security interest in the unearned insurance premiums, and in *Smith* and *Watts,* the courts also found that the creditor had a security interest in the unearned extended warranty charge. The Debtor contends that the language in Chrysler's contract is not identical to the language in the cases cited by Chrysler.

The *Smith* case involved two separate contracts. The language in a GMAC retail installment contract was as follows:

**Security Interest.** You give the creditor a security interest in (1) the vehicle being purchased, (2) any accessories, equipment and replacement parts installed in the vehicle, *(3) any insurance premiums and charges for service contracts returned to the Creditor, (4) any proceeds of insurance policies or service contracts on the vehicle, and (5) any proceeds of insurance policies on your life or health which are financed in this contract.* This secures payment of all amounts you owe in this contract and in any transfer, renewal, extension or assignment of this contract. It also secures your other agreements in the contract.

*Smith,* 167 B.R. at 897 (emphasis supplied). The language in a Chrysler Credit Corporation retail installment contract contained the following language:

Buyer grants and Creditor shall have a Security Interest, as the term is defined in the Uniform Commercial Code of the state in which this contract is executed, in the property and the proceeds thereof, including any accessions to the property, *in any premium rebates from insurance or service contracts financed hereunder,* in the proceeds of any insurance on the property, and *in the proceeds of any credit life and/or accident and health insurance financed hereunder,* until all amounts due under this contract are paid in full.

*Id.* (emphasis supplied). In the *Watts* case, a GMAC retail installment contract contained language substantially the same as the GMAC contract in *Smith.* See *Watts,* 132 B.R. at 31–32. In the *Cooper* case, the language in a GMAC retail installment contract was as follows:

The security interest also covers *insurance premiums and charges for service contracts returned to the creditor . . . .*

*Cooper,* 104 B.R. at 774–75 (emphasis supplied).

The retail installment contracts in the *Watts* and *Cooper* cases also contained additional provisions pertaining to the unearned premium or charges financed by the creditor. The contract in the *Watts* case provided:

Optional Insurance or Service Contracts. This contract may contain charges for optional insurance or service contracts. If the vehicle is repossessed, you agree that *the creditor may* claim benefits under these contracts and *terminate them to obtain refunds for unearned charges.*

*Watts,* 132 B.R. at 32 (emphasis supplied). The provision in the contract in the *Cooper* case read as follows:

If the vehicle is repossessed, you agree that *the creditor may* claim benefits under these contracts and *terminate them to obtain refunds for unearned charges.*

*Cooper,* 104 B.R. at 775 (emphasis supplied). No similar provision is described in the *Smith* opinion.

## C. Conclusion

Unlike the contract in this case, none of the contracts in the cases cited by Chrysler specifically condition that the security interest be limited to situations where there has been a "cancellation" or "termination." In addition, the contracts in the *Watts* and *Cooper* cases granted the creditor the present right, upon a default, to terminate the contracts for insurance, and thereby obtain a refund of any unearned premium. The retail installment contract in this case does not provide Chrysler with any such right to cancel or terminate the Insurance Contracts. *See Anzalone v. State Farm Mut. Ins. Co.,* 92 A.D.2d 238, 239, 459 N.Y.S.2d 850 (N.Y.App.Div.1983) ("A premium finance company has the right to cancel the policy it has financed but only if the right is contained in the finance agreement.").

The Court finds that absent the right to cancel or terminate the Insurance Con-

tracts upon default, Chrysler has no present interest in the unearned premiums that existed on the petition date and therefore no security interest in them. The unearned premiums on the Insurance Contracts, which diminish over time as the loan is paid down, will never be available to Chrysler absent termination or cancellation. Chrysler's security interest is limited to proceeds or refunds arising after occurrence of a condition precedent: the termination or cancellation of the Insurance Contracts. Chrysler's security interest cannot attach until the condition precedent occurs. Under the terms of the retail installment contract in this case, Chrysler has no right to cause the condition precedent to occur through termination or cancellation of the Insurance Contracts.

■ Chrysler could have retained for itself a security interest in the unearned premiums, regardless of cancellation or termination, by using different language or by reserving for itself the right to cancel or terminate the Insurance Contracts, as is customary in premium finance agreements. *See Baker & Co. v. Preferred Risk Mut. Ins. Co.,* 569 F.2d 1347, 1348 (5th Cir.1978) ("The finance company is secured in making this advance [of the premium] by obtaining the right to cancel the policy and to receive the return premium due upon cancellation if timely repayments are not made.") (quoted in *Cooper,* 104 B.R. at 775). Under New Hampshire law, a premium finance company may cancel an insurance policy only if the premium finance agreement contains a power of attorney permitting the company to cancel the policy. *See* RSA 415–B:9(I) ("When a premium finance agreement contains a power of attorney enabling the premium finance company to cancel upon default any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be canceled by the premium finance company unless such cancellation is effected in accordance with the

section."); *see also Alliance Acceptance Co. v. Yale Ins. Agency, Inc.,* 271 Ill. App.3d 483, 208 Ill.Dec. 49, 648 N.E.2d 971, 976 (1995) ("Without a power of attorney, the premium finance company has no right or authority to seek cancellation of the insurance policy and the insurer has no right or obligation to cancel that policy."); *Hodges v. Colonial Lloyd's Ins.,* 546 So.2d 898, 901–02 (La.Ct.App.1989); *Black v. Globe Am. Cas. Co.,* 19 Ohio App.3d 58, 482 N.E.2d 1278, 1282 (1984). The retail installment contract in this case fails to contain such a provision.

Thus, despite the holdings in the *Smith, Watts,* and *Cooper* cases, the Court finds that Chrysler does not have a security interest in the Debtor's Insurance Contracts, nor in their cancellation values, unless and until the premiums are rebated or refunded to Chrysler due to cancellation or termination of the Insurance Contracts. Accordingly, the Court overrules Chrysler's objection to confirmation of the Debtor's Chapter 13 plan. Chrysler is not entitled to have the value of the unearned premiums or the Insurance Contracts treated as a secured claim under 11 U.S.C. § 1325(a)(5). Unless and until the condition precedent (i.e., cancellation or termination) occurs, Chrysler's lien does not attach and has no value. However, Chrysler is entitled to retain its lien on the proceeds of the Insurance Contracts and any refund or rebate of any unearned premiums in the event of any future cancellation or termination of one or more of such Insurance Contracts. If or when the Debtor's Insurance Contracts cancel or terminate, the value of Chrysler's claim will be paid to it by the insurer under the respective Insurance Contracts. *See* RSA 415–B:10 ("Whenever a financed insurance contract is cancelled, the insurer shall return whatever gross unearned premiums are due under the insurance contract to the premium finance company for the account of the insured or insureds as soon as reasonably possible, but in any event, within 30 days after the effective date of cancellation.").

The Chapter 13 Trustee shall submit a proposed order confirming the Debtor's plan in accordance with this opinion within ten days. The proposed order shall expressly provide for Chrysler's retention of its lien on any proceeds, rebates, or refunds from the Insurance Contracts. This opinion and order constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.