F. E. FISHER & CO. v. PHOENIX MUTUAL LIFE INS. CO. et al.

and

PHOENIX MUTUAL LIFE INS. CO. v. F. E. FISHER & CO. et al.

Western Section. July 9, 1932.

Petition for Certiorari denied by Supreme Court, November 26, 1932.

Cate, Smith & Long, of Knoxville, for F. E. Fisher & Co.

Lee, Price & Meek, of Knoxville, Solicitors for Phoenix Mutual Life Ins. Co.

Williams, Macey & Felts, of Nashville, Solicitors for Mrs. Grebe.

HEISKELL, J. This is a controversy between F. E. Fisher & Company and Mrs. Nelle Downing Grebe over the proceeds of two

policies of $5,000 each, issued by the Phoenix Mutual Life Insurance Company on the life of her husband, Paul M. Grebe. Mrs. Grebe claims such proceeds as the beneficiary under an "Insurance Conservation Agreement," and Fisher & Company claim under an assignment made to them by Paul M. Grebe a few days before his death.

His Honor, Chancellor Robert M. Jones, decreed in favor of Fisher & Company. Mrs. Grebe has appealed and assigned errors.

On March 5, 1929, Paul M. Grebe signed an application to the Phoenix Mutual Life Insurance Co. for $5,000 insurance and on December 18, 1929, made another similar application for $5,000 insurance. Policies were issued on these two applications, practically alike with same provisions and conditions. Both policies designated Nellee Downing Grebe, his wife, as beneficiary and both reserved the right to change the beneficiary.

On March 11, 1929, a conservation agreement was entered into between Paul M. Grebe and the Company, providing for payment of the death claim to Nelle Downing Grebe as follows:

"A Monthly Income of FIFTY Dollars and, if the total amount held hereunder when the first installment of such income is due exceeds Ten Thousand Dollars, an additional monthly income at the rate of $5 for each $1,000 of such excess."

Both policies contain on the first page under the head of beneficiaries, the agreement of the company to pay as follows:

"The Beneficiaries designated and in the manner described in the Company's Insurance Conservation Agreement No. A-10144 dated March 11, 1929, provided written consent by the insured that payment be so made is received at the Home Office of the Company during the lifetime of the insured, otherwise as provided in the application herefor, . . ."

The first policy then adds "subject to the beneficiary provisions in Section 8" and the second policy "subject to the beneficiary provisions in Section 9," Section 8 in the one policy being the same as Section 9 in the other.

Paul M. Grebe was in the employment of Fisher & Company, stockbrokers and was charged with having embezzled $13,000 of their money which he seems to have admitted. At least on January 23, 1931, he executed assignments of the two policies in the same terms. The assignment of the first policy is:

"N. B.—This blank should be used only when the policy is to be assigned as collateral security and it is not intended to transfer the entire interest of the assignor in the policy to the assignee. If more than one policy is to be assigned, a separate blank for each policy should be used. No loan will be made by the Company on a policy assigned to a minor until such assignee has attained legal age and has thereafter released his interest

in the policy or joins in the loan. Send both the original and duplicate to the Home Office. The original will be returned after indorsement by the Company.

"Assignment to a Creditor. Original

" (To be filed with the policy after indorsement.)

"For value received, I do hereby assign and transfer as collateral policy No. 563049, issued by the Phoenix Mutual Life Insurance Company of Hartford, Connecticut on the life of Paul M. Grebe, and all right, title and interest therein unto F. E. Fisher & Company, to the extent of such interest as said assignee may have when said policy becomes a claim.

"Dated at Nashville, State of Tennessee, this 23rd day of January, 1931.

"Signed in presence of Paul M. Grebe.

"D. L. Belk,

" (Witness)

"STATE OF TENNESSEE, County of Davidson SS.

"On this 23rd day of January, 1931, before me, the undersigned, appeared Paul M. Grebe, personally known to me and duly acknowledged the execution of the above instrument.

"Geo. M. Spears

" (Seal)                                                 Notary Public.

"My Com. Exp. 7-23-1934.

"N. B. The signature of all parties joining in the assignment must be properly witnessed and acknowledged. A form of release is printed on the other side.

"Received and duplicate filed at the Home Office of the Company in Hartford, this 28th day of January, 1931, the Company assuming, however, no responsibility whatever as to the validity of this assignment.

"PHOENIX MUTUAL LIFE INSURANCE COMPANY,

"By H. E. Johnson,

"Secretary."

The assignment of the second is identical except the number of the policy.

On January 29, 1931, the insured took poison, from the effects of which he died on February 5, 1931.

Both Mrs. Grebe and Fisher & Company made proofs of death and demanded payment of the policies from the insurance company.

Fisher & Company asserted their claim to the proceeds of the policies under the assignments by will filed against Mrs. Grebe and the insurance company. Mrs. Grebe asserted her claim under the Insurance Conservation Agreement by an answer and cross-bill. The insurance company filed a bill of interpleader against Mrs. Grebe and

Fisher & Company. Thereafter the causes were consolidated and heard together.

In his opinion the Chancellor said:

"I am of the opinion that the Conservation Agreement did nothing more than change the mode of payment of the benefits under the policy, making them payable in installments instead of lump sum upon the death of the insured."

There are five assignments of error, the effect of which may best be stated in the contention of appellant as appears in the brief as follows:

"(1) The Insurance Conservation Agreement created two separate and distinct interests in respect to the insurance, viz: (1) The right in Mrs. Grebe as the beneficiary, to receive the proceeds of the policies in monthly installments of $50 per month during the period of her survivorship of the insured, and (2) the right reserved by the insured to his 'executor, administrator or assignee' to receive the balance of the insurance, if any, that may remain at the death of Mrs. Grebe after payment to her of the monthly installments during her life.

"(2) This right of Mrs. Grebe to receive the monthly installments was a vested right and was beyond the power of the insured to cut it off or defeat it either by a change of beneficiary or an assignment.

"(3) Even if the Conservation Agreement be held to have left unimpaired in the insured the right to change the beneficiary, such right could be exercised only in the manner prescribed in the policies, and the assignments, not being a compliance with such provisions of the policies, cannot operate as a change of beneficiary.

"(4) By the assignments the insured could transfer only his interest and not Mrs. Grebe's interest under the policies and the Conservation Agreement, and all that passed under the assignments to Fisher & Company was merely the expectancy reserved by the insured under the Conservation Agreement to 'his assignee' to receive such balance of the insurance fund as may remain on the death of Mrs. Grebe after payment to her of the monthly installments of $50 per month during her lifetime."

The right to change the beneficiary having been reserved by the insured, it is insisted by the appellant that the change in order to be effective must be made in the manner provided in the policy. This may be conceded. It may also be conceded that except for the assignment, there was no change of beneficiary in the manner provided in the policy. It may be still further conceded that the assignment would not be effective to change the beneficiary but for a provision in the policy which is as follows:

"If the right to change the beneficiary has been reserved to the insured an assignment, release or surrender of this policy or any interest therein by the insured shall operate to the extent thereof to assign, release or surrender the interest of any and all beneficiaries hereunder."

So there are two methods provided in the policy for changing the beneficiary. One by filing at the home office a written notice accompanied by the policy for record and endorsement of the change thereon by the company. The other is by assignment and it is provided that the company shall not be responsible for the validity of the assignment and shall not be held to have notice of any assignment of this policy "until the original assignment or a copy thereof is received at the Home Office of the Company." The assignment shows that it was "received and duplicate filed at the Home Office of the company in Hartford this 28th day of January, 1931." The provision for executing a valid assignment was literally complied with and the policy provides that this shall be effective to change the beneficiary to the assignee. But for this provision in the policy that the assignment should have this effect, as we have said, it may be conceded that the assignment without more, would not change the beneficiary, and this is as far as any of the authorities cited for appellant go. Having conceded the full effect of these cases, it is not necessary to discuss them. We hold that the beneficiary was changed by the assignment and that it was not necessary to pursue any other method provided in the policy for changing the beneficiary and that this is conclusive in favor of Fisher & Co. unless the conservation agreement so changed the policies as to prevent the assignment having any effect upon the interest of the beneficiary. No authority is presented to support this contention of the appellant and we can see no reason why the holding of the chancellor in this regard is not correct, that the conservation agreement did nothing more than change the mode of payment of the benefit under the policy, making them payable in installments instead of a lump sum upon the death of the insured.

It is insisted by counsel for appellant that this view destroys the whole force of the conservation agreement. We do not think so. It leaves to the agreement the whole force and effect that it was intended to have, that is to change the payment from cash to monthly installment plan. It is easy to understand why the insured, if he lacked confidence in the financial ability of his wife should prefer this plan to the cash payment, but it is not easy to see why this should make her interest as beneficiary any more vested or unchangeable than if he had adopted the cash payment plan. It is argued that the assignment can take effect only on what remains after the wife has collected the $50 per month until the end of her life. Why can it not just as well be argued that if the cash payment plan

had been adopted, the assignment could take effect only on what remained after the beneficiary had collected the full amount in cash. We can see no reason why after the conservation agreement the beneficiary could not have been changed as provided in the policy without assignment, just as well as if the cash payment plan had been chosen, and if this is true, we think it equally clear that the assignment was effective to change the beneficiary to the assignee.

All assignments of error are overruled and the decree of the lower court is affirmed.

Owen and Senter, JJ., concur.