In the Matter of Dennis Carmen FOX, Debtor.

Bankruptcy No. 685–00410.

United States Bankruptcy Court, N.D. Ohio.

July 10, 1986.

Stephen F. Tilson, Hottenroth, Gaverick & Tilson Co. L.P.A., Galion, Ohio, for movant George Raike.

Josiah L. Mason, Mason, Mason & Fridline, Ashland, Ohio, for claimant Bank One.

Donald M. Miller, G.S. Krainess Co., Canton, Ohio, for debtor-objector.

## MEMORANDUM OF DECISION RE: MOTION FOR RECONSIDERATION, OBJECTIONS TO CLAIMS

JAMES H. WILLIAMS, Bankruptcy Judge.

The controversy presently before the court arises out of objections filed by the Chapter 13 debtor, Dennis Carmen Fox (Fox or debtor) to proofs of claim filed on behalf of Huntington National Bank (Huntington) and Bank One of Ashland (Bank One). All parties were given an opportunity to be heard at hearings duly convened and each party filed a brief in support of his or its position.

The debtor has filed written objections to claims 14 and 19 of Huntington and claims 20 and 21 of Bank One. Huntington's claims are based upon three promissory notes executed between 1976 and 1982. The first note was signed on October 26, 1976 on behalf of the Ashland Agricultural Center, Inc. (Ag Center) by George Raike, president and Dennis Carmen Fox, vice-president. Raike and Fox additionally signed the note in their individual capacities. The note states that it is secured by a mortgage on real estate located in Ashland County, Ohio, although no information verifying this fact has been supplied to the court. On January 17, 1980 a second note was executed by Raike and Fox as officers of the Ag Center in the amount of $75,-000.00. Although neither Raike nor Fox signed the second note in their individual capacities, both executed a personal guaranty for the Ag Center's obligations on January 21, 1981. The second note purports to be secured by a second mortgage on real estate in Ashland, Ohio. A third note in the amount of $82,376.99 was executed on May 24, 1982, but was signed solely by Raike. All three notes were included in claim 14, but the bank later filed an amended claim (claim 19) and withdrew the third obligation from its calculations.

The two claims filed by Bank One arise from similar transactions. Claim 20 arises out of a personal guarantee signed by Fox of a $50,000.00 loan made on July 12, 1977 to the Ag Center. Claim 21 is for Fox's personal guaranty of a $65,000.00 note of the Ag Center and was executed on January 9, 1979. Both obligations list various items of property of the Ag Center as security. Testimony indicated that Raike also executed guarantees for these obligations and has been making regular interest payments. Although the Ag Center has been dissolved, it appears that the collateral may still be available to reduce these obligations.

The debtor objected to claim 14 of Huntington on the ground that the claim should be considered secured. The objection explained:

> It is understood that this creditor is being paid in accordance with the terms of its obligation by a third party. This claim is provided for in the debtor's plan but should be treated as a secured claim for the reason that the security securing said claim exceeds the value of the claim.

Service of the objection was made on the trustee and counsel for Huntington. The objection recited that if no request for hearing was filed within thirty days, the relief sought would be granted by the court. No such request was filed and the

court issued an order sustaining the debtor's objection. The debtor then filed an objection to Huntington's amended claim number 19. The debtor stated that the claim should be classified as secured and served copies of the objection on the trustee and Huntington. Although neither the trustee nor the bank responded, an objection and request for hearing was filed by Raike. Raike simultaneously filed a motion for reconsideration of the court's ruling on claim 14. A hearing was scheduled on both matters at which time the parties agreed to submit the issues on briefs.

During this time, the debtor also filed an objection to claims 20 and 21 of Bank One, asserting that the debts were not owed. Service was effected on the trustee and the bank. A timely response was filed by Bank One and a hearing was held. The debtor argued that since no demand was ever made on the notes and payments were being made, they were not due. The bank asserted that it nevertheless had a right to file a proof of claim regardless of whether a demand had been made or if it was being paid by another party. Mr. Raike was represented at the hearing and joined with the bank in its argument. At this hearing the parties requested time to submit briefs on all issues before the court prior to a final determination on any of the four claims. The briefs have now been filed and the court will first address the common issues of law before applying those principles to each of the objections.

## DISCUSSION

■ 11 U.S.C. § 502 governs the allowance of claims or interests in a bankruptcy case. A proof of claim or interest is prima facie evidence of the claim or interest and is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). Contingent or unliquidated claims may be estimated for the purpose of their allowance if the actual liquidation of the claim or fixing thereof would unduly delay the administration of the estate. 11 U.S.C. § 502(c). The language of Section 502(c) is mandatory and places an affirmative duty on the court to

estimate unliquidated claims under proper circumstances. *In re Nova Real Estate Investment Trust*, 23 B.R. 62 (Bankr.E.D. Va.1982). Reconsideration of a claim may be granted if "cause" is shown. 11 U.S.C. § 502(j). Bankruptcy Rule 3008 implements this section and provides that a "party in interest" may move for reconsideration of an order allowing or disallowing a claim against the estate, and that the court, after a hearing on notice, should enter an appropriate order.

Claims of co-debtors, sureties and guarantors, however, are treated differently. 11 U.S.C. § 501(b) permits a co-debtor, surety or guarantor to file a proof of claim on behalf of the creditor to which he is liable if the creditor does not timely file a proof of claim. This protects the co-debtor in the event the creditor sits on his rights and elects to pursue only the co-debtor. The claim filed by the co-debtor must be in the name of the creditor unless the name of the creditor is unknown, thus eliminating double proof of a single claim. A co-debtor's claim for contribution or reimbursement, however, is disallowed to the extent it is contingent at the time of allowance under Section 502(e). Section 502(e) states:

(1) Notwithstanding subsections (a), (b), and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that—

(A) such creditor's claim against the estate is disallowed;

(B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution; or

(C) such entity asserts a right of subrogation to the rights of such creditor under section 509 of this title.

(2) A claim for reimbursement or contribution of such an entity that becomes fixed after the commencement of the case shall be determined, and shall be allowed under subsection (a), (b), or (c) of

this section, or disallowed under subsection (d) of this section, the same as if such claim had become fixed before the date of filing of the petition.

The legislative history provides insight into the application of Section 502(e) to claims of co-debtors:

Section 502(e)(1) states the general rule requiring the court to disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on, or that has secured, the claim of a creditor to any extent that the creditor's claim against the estate is disallowed. This adopts a policy that a surety's claim for reimbursement or contribution is entitled to no better status than the claim of the creditor assured by such surety. Section 502(e)(1)(B) alternatively disallows any claim for reimbursement or contribution by a surety to the extent such claim is contingent as of the time of allowance. Section 502(e)(2) is clear that to the extent a claim for reimbursement or contribution becomes fixed after the commencement of the case that it is to be considered a prepetition claim for purposes of allowance. The combined effect of sections 502(e)(1)(B) and 502(e)(2) is that a surety or codebtor is generally permitted a claim for reimbursement or contribution to the extent the surety or codebtor has paid the assured party at the time of allowance. Section 502(e)(1)(C) alternatively indicates that a claim for reimbursement or contribution of a surety or codebtor is disallowed to the extent the surety or codebtor requests subrogation under section 509 with respect to the rights of the assured party. Thus, the surety or codebtor has a choice, to the extent a claim for contribution or reimbursement would be advantageous, such as in the case where such a claim is secured, a surety or codebtor may opt for reimbursement or contribution under section 502(e). On the other hand, to the extent the claim for such surety or codebtor by way of subrogation is more advantageous, such as where such claim is secured, the sure-

ty may elect subrogation under section 509.

124 Cong.Rec. H11,094 (daily ed. Sept. 28, 1978); 124 Cong.Rec. S17,410–11 (daily ed. Oct. 6, 1978). The impact of these provisions is both fair and equitable. The co-debtor will receive both the benefits and the burdens of the creditor's claim. This statutory scheme protects the creditor since the co-debtor is not permitted to compete with the creditor until the creditor's claim has been paid in full. 11 U.S.C. § 509(c). Finally, other unsecured creditors are not unduly benefitted by the fact that a co-debtor can partially or totally satisfy the creditor's claim.

## CLAIM 14

■ Raike has moved the court under 11 U.S.C. § 502(j) to reconsider its order sustaining the debtor's objection to claim 14 of Huntington. The first issue that confronts the court is whether Raike has standing as a party in interest under Bankruptcy Rule 3008 to litigate this motion. The debtor argues that since a creditor is not a party in interest to object to the claim of another creditor, then, similarly, a creditor is not a party in interest to move for reconsideration of another creditor's claim. Case law has developed such that although a creditor would fall within the definition of a party in interest, the needs of efficient administration have led to the recognition that the right to object to claims is generally exercised by the trustee. *See* 3 *Collier on Bankruptcy* para. 502.01[2] (15th ed. 1986). In the event that a general creditor requests the trustee to object to another creditor's claim and the trustee refuses, the court may authorize the creditor to proceed. *In re Parker-Montana Co.*, 47 B.R. 419 (D.C.Mont.1985); *In re Meade Land Development Co., Inc.*, 1 B.R. 279 (Bankr. E.D.Pa.1979). The debtor urges that the same administrative concerns dictate a similar interpretation in the area of reconsideration of claims.

■ The debtor's argument overlooks the unique position of Raike as a co-debtor. Allowance or disallowance of Huntington's

claim directly impacts on Raike's rights of contribution and reimbursement. 11 U.S.C. § 502(e)(1)(A). The classification of the creditor's claim as secured or unsecured affects the creditor's, and thus the co-debtor's, rights under a plan and affects the co-debtor's decision on whether to elect subrogation or contribution. The policy reasons which have led to a limitation on creditors' rights to object to claims are not threatened by allowing co-debtors to move the court to reconsider a claim upon which their rights are founded. Normally, the trustee, as a representative of all the creditors, would have objected to the bank's claim and therefore would have been the logical party to move for reconsideration in the event the objection was overruled. Here Raike is not moving for reconsideration in opposition to the claim but rather in support of it. The trustee's and Raike's interests are clearly not aligned and the court feels it unnecessary and illogical to require Raike, as a co-debtor on the claim, to have requested the trustee to act in his behalf. Further, in this court's experience, only a small number of claims involve co-debtors, and permitting a co-debtor to petition for reconsideration will not impede the orderly administration of an estate. Finally, as noted, by allowing co-debtors to file claims, the Code has sought to protect co-debtors from creditors who sit on their rights. To allow the creditor to ignore an objection to its claim without affording the co-debtor an opportunity to voice his concerns would in effect circumvent the goal Section 501(b) sought to achieve. Therefore, the court finds that a co-debtor is a party in interest entitled to move for reconsideration of the claim of the creditor to which he is liable.

The next issue raised by the motion is whether "cause" exists to reconsider the claim. Determination as to whether or not there is sufficient cause lies within the sound discretion of the court. 2 *Collier Bankruptcy Manual* para. 502.11(3) (3rd ed. 1986). Raike moved promptly for reconsideration of the debtor's objection to claim 14, an objection of which he received no notice. The plan has not yet been con-firmed and the court sees no great prejudice to other creditors likely to result from reconsideration. On the other hand the impact upon the co-debtor would be unjustified, especially since, in the court's view, Raike's position has merit. *See, In re Resources Reclamation Corp. of America,* 34 B.R. 771 (Bankr. 9th Cir.1983). Accordingly, the court finds that cause exists for reconsideration of its order sustaining the debtor's objection to claim 14.

The last issue raised by the motion deals with the merits of the claim itself and the debtor's objection thereto. The debtor argues that the claim should be classified as secured. Section 506(a) defines secured claims for the purposes of administration of the estate and provides:

(a) An allowed claim of a creditor *secured by a lien on property in which the estate has an interest, or that is subject to setoff* under section 553 of this title, *is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff,* as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest. (emphasis added)

Initially the court notes that it is unclear from the debtor's objection whether the debtor is maintaining that the claim is secured by virtue of the alleged security interest in real property or by virtue of Raike's co-guaranty. Therefore the court will address both matters.

The key phrase in Section 506(a) is "property in which the estate has an interest." As previously indicated, no evidence has been presented to show who owns the Ashland County property alleg-

edly securing the note. The court can only assume it is the property of the now defunct Ag Center and to the extent that the debtor has an interest in that property, the claim should be considered secured. On the other hand, any assertion that the claim should be considered secured since there is a co-debtor is clearly without merit. The definition of secured claim under Section 506(a) simply does not encompass such a situation.

### CLAIM 19

Claim 19 is an amendment of claim 14. Raike has filed a timely response to the debtor's objection that the claim is secured. For the same reasons as stated above, the court concludes that the claim is secured only if the debtor has an interest in the property allegedly securing the notes.

### CLAIMS 20 and 21

The debtor has objected to claims 20 and 21 of Bank One on the basis that they are not owed. Testimony at the hearing indicated that no demand had been made on the obligations underlying the claim and that interest payments had been made by Raike. The debtor argues that the claims are therefore not due.

█ The claims are both founded on the debtor's personal guaranty. A guaranty is a classic example of a contingent obligation. *In re Barnett,* 42 B.R. 254 (Bankr. S.D.N.Y.1984). Contingent obligations are allowable and entitled to estimation under Section 506(c) and debtor's argument is therefore without merit.

The debtor, however, also argues that the estimation process should entail a determination of both the value of the bank's collateral and the value of Raike's contribution as a guarantor. The Bankruptcy Code gives no guidance on how to estimate claims which are contingent or unliquidated. The leading bankruptcy treatise comments:

> In estimating a claim, the bankruptcy court should use whatever method is best suited to the particular circumstances. Although the bankruptcy court is

bound by the legal rules which govern the ultimate value of the claim, there are no other limitations on the court's authority to estimate claims.

3 *Collier on Bankruptcy* para. 502.03 (15th ed. 1985). (Citations omitted).

█ The bank's claim against the debtor is contingent upon non-payment by the Ag Center. To properly estimate this type of claim the court must take into account the ability of the primary obligor to pay the obligation. *See, In re Zucker,* 5 B.C.D. 433 (Bankr.S.D.N.Y.1979). Such a determination will, in the court's view entail the consideration of the various assets and liabilities of the Ag Center. Thus, the value of any property held by the Ag Center securing the bank's debt is relevant to the estimation process. Raike's potential contributions, however, are not relevant. Fox's obligation is in no way contingent upon the default of both the Ag Center and Raike. Further, to allow this factor to reduce or diminish the bank's claim would destroy the fair and equitable scheme established for co-debtors by the Code. In effect, the debtor is asking the court to estimate a co-debtor's claim, a procedure that is not permitted under Section 502. Assuming the court were to estimate Raike's potential contribution and reduce the bank's claim accordingly, Raike would be prohibited from filing a claim under Section 502(e) until he paid the claim. The bank's claim would not be reduced and would not fully protect Raike's rights of contribution and indemnity or subrogation. Such a result would affront both the Code and the court's sense of equity.

### CONCLUSION

In view of the foregoing the court concludes as follows:

1) A co-debtor is a party in interest under Bankruptcy Rule 3008 for reconsideration of an order disallowing a creditor's claim upon which the co-debtor is liable.

2) Cause exists under Section 502(j) to reconsider claim 14.

3) Claims 14 and 19 are secured as defined under 11 U.S.C. § 506(a) to the

extent of the value of the bank's interest in the estate's interest in the property securing the underlying obligations.

4) A claim is not a secured claim as defined in 11 U.S.C. § 506(a) by virtue of the existence of a co-debtor.

5) Claims 20 and 21 are allowable as contingent claims which can be estimated, if necessary, under 11 U.S.C. § 502(c).

6) Estimation of a claim based upon a personal guaranty must entail consideration of the primary obligor's ability to pay, including a review of the primary obligor's assets and liabilities.

7) Estimation of a claim based upon a personal guaranty should not involve consideration of a co-guarantor's ability to pay.

An order consistent herewith shall issue.