**In re Clyde D. CUPP, Carol C. Cupp, Debtors.**

**Clyde D. Cupp, Carol C. Cupp, Plaintiffs,**

**v.**

**Associates Consumer Discount Company, Defendants.**

**Bankruptcy No. 98–23037 JFK.**
**Adversary No. 98–2257.**

United States Bankruptcy Court, E.D. Pennsylvania, Pittsburgh Division.

Feb. 5, 1999.

Francis E. Corbett, Calaiaro & Corbett, P.C., Pittsburgh, PA, for debtors/plaintiffs.

Connor M. Cogswell, Lentchner and Associates, Pittsburgh, PA, for defendant.

Gary J. Gaertner, Pittsburgh, PA, Chapter 13 Trustee.

## MEMORANDUM OPINION[1]

JUDITH K. FITZGERALD, Bankruptcy Judge.

The matter before the court is a motion to dismiss Debtors' Amended Complaint to Determine Secured Status Pursuant to 11 U.S.C. § 506 filed on behalf of the first and second mortgage holder, Associates Consumer Discount Company. Because we must examine documents (the note, mortgage, and insurance policy) submitted by the parties in conjunction with this motion, we treat it as a motion for summary judgment.

Debtors own real property that is their primary residence. Based on an appraisal performed in 1997 Debtors believe the fair market value of the property is $48,000. There is a first mortgage in the amount of $50,132.47 held by Associates Consumer Discount company. Debtors' property also is encumbered by a second mortgage held by Associates Consumer Discount Company. The balance due on the second mortgage when the Amended Complaint was filed was $11,346.62. Both mortgages were taken out within seven days of each other.

█ Debtors assert that the loan requires security, in addition to the primary residence, in the form of credit life and disability insurance. Therefore, Debtors argue, the loan is not secured only by real estate that is Debtors' primary residence and the obligation is modifiable under 11 U.S.C. § 1322(b)(2). Debtors also contend that, because the second mortgage was entirely unsecured when it was made, and remains so, it should be treated as an unsecured obligation under the chapter 13 plan pursuant to 11 U.S.C. § 506. Associates seeks dismissal of the complaint on the ground that it fails to state a claim upon which relief can be granted and argues that credit life and disability insurance is not additional security which would deprive it of the protection of § 1322(b)(2).

Debtors aver that they were required to purchase the life insurance in order to obtain the second mortgage loan. In Pennsylvania, creditors are forbidden, under the Secondary Mortgage Loan Act, 7 P.S. § 6601 et seq., to require a borrower to purchase credit life and disability insurance as a prerequisite to obtaining the loan.[2] Furthermore, nothing in the loan agreement, mortgage, or life insurance policy requires Debtors to have the insurance.[3] Although we must view the facts in the light most favorable to the non-moving party, Debtors herein, on a motion to dismiss, see, e.g., Rehkop v. Berwick Healthcare Corp., 95 F.3d 285 (3d Cir.1996), and to determine whether there is a material fact in dispute on a motion for summary judgment,[4] see, e.g., Newport Associates Development Co. v. The Travelers Indemnity Co., 162 F.3d 789 (3d Cir.1998), we cannot presume, and Debtors have offered no evidence, that Associates violated the Secondary Mortgage Act in this regard. Accordingly, we find, for purposes of this motion, that Debtors voluntarily obtained the insurance.

---

1. The court's jurisdiction was not at issue. This memorandum Opinion constitutes our findings of fact and conclusions of law.

2. The Secondary Mortgage Loan Act, 7 P.S. § 6601 et seq., gives

[a]ll secondary mortgage loan licensees ... power and authority ... (5) To provide credit life, credit accident and health and credit unemployment insurance. A borrower shall not be compelled to purchase credit life, credit accident and health or credit unemployment insurance as a condition of the granting of a secondary mortgage loan and all contracts utilized shall reflect a clear disclosure that the purchase of credit life, credit accident and health or credit unemployment insurance is not a prerequisite to obtaining a loan; if, however, the borrower elects to obtain credit life, credit accident and health or credit unemploy-

ment insurance, the borrower shall consent thereto in writing.

7 P.S. § 6609. No separate written consent to purchase insurance appears in the record but the parties have not raised this point.

3. The only reference to insurance is a covenant by Debtors that they will "provide insurance against loss of or damage to the property". We have previously held that hazard insurance is not additional security for purposes of § 1322(b)(2). See, e.g., In re Crystian (Mellon Bank, N.A. v. Crystian), 197 B.R. 803 (Bankr.W.D.Pa.1996). Debtors do not raise the issue of hazard insurance.

4. If the evidence is such that a jury could return a verdict for the non-moving party, summary judgment must be denied. Williams v. Chrysler Corp., 163 F.3d 183 (3d Cir.1998).

There is a body of case law that holds that, where the decision to obtain the credit life and disability insurance is entirely the debtor's and is revocable by the debtor, the insurance does not constitute additional security that would take the mortgage out of § 1322(b)(2). *See Matter of Washington,* 967 F.2d 173, 175–76 (5th Cir.1992). In the matter before us, the policy is owned by the lender and the beneficiary designation in favor of the lender is irrevocable. Debtors prepaid the entire premium, which was financed by this lender. The policy provides a declining amount payable as proceeds. As the balance of the loan declines, so do the insurance proceeds. We disagree that Debtors' voluntary election to purchase credit life and disability insurance is controlling or even a relevant factor for purposes of an analysis under § 1322(b)(2).

We have no issue to address concerning revocability because neither the policy nor the beneficiary are revocable by Debtors. Nonetheless, we conclude that credit life and disability insurance is not additional security for purposes of § 1322(b)(2) which provides that, in a chapter 13, a mortgagee's rights cannot be modified if the mortgagee is "secured only by a security interest in real property that is the debtor's primary residence." 11 U.S.C. § 1322(b)(2). The question of what types of interests constitute additional security has been in the forefront of legal debate since *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (debtor cannot strip down an undersecured mortgage lien in a chapter 7), and *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) (debtor cannot modify a mortgagee's rights in a chapter 13 when the mortgagee is

secured only in real property that is the debtor's principal residence). The question of credit life and disability insurance has not been before this court until now.

In this case, the record establishes that nothing in the Note, mortgage, or insurance policy purports to create a security interest in the policy or its proceeds,[5] nor is there separate documentation creating a security interest in the policy or the proceeds.[6] In addition, only the husband Debtor is insured.

On the other hand, the amount financed includes the insurance premiums but neither the policy nor the proceeds is a separate source against which Associates could execute if Debtors default on their mortgage. Although the policy term coincides with payment of the loan, proceeds are not payable to Associates unless the husband Debtor dies or becomes totally disabled. Associates is entitled to the proceeds only if one of two unlikely contingencies occurs: total disability or death of the husband Debtor prior to expiration of the policy or maturity of the note.[7] The insurance functions solely as a substitute for the money Mr. Cupp would have used to pay the loan in either of those two events. It is not additional security.

■ Debtors urge us to reconsider our position in *In re Lewandowski,* 219 B.R. 99 (Bankr.W.D.Pa.1998), and strip down Associates' second mortgage to the value of the collateral under § 506. In *Lewandowski* we adopted the minority view and held that a properly perfected security interest only in property that is a debtor's primary residence is not modifiable even if the claim is wholly unsecured. Our conclusion was based on the fact that the Supreme Court in *Nobelman* focused on the rights of the mortgagee under § 1322(b)(2) and not the value of the claim

---

5. However, as noted, the policy owner is the lender and Debtor Clyde Cupp is one of a group of insureds. Thus, Debtor has assigned whatever interest he may have had in proceeds to the lender.

6. We do not adhere to the view that the additional security interest must arise under the mortgage or note themselves with respect to § 1322(b)(2). *See In re Crystian,* 197 B.R. 803, 806–07 (Bankr.W.D.Pa.1996)(a checking account agreement entered into seven and one-half years before the mortgage existed asserted a security interest in any balance in the account to secure

any debt the debtor owed to the bank; mortgagee's rights were therefore modifiable). *Contra In re Wright,* 128 B.R. 838, 846, n. 7 (Bankr. N.D.Ga.1991) (a "security interest must arise under the security deed and 'only properly perfected secured claims will be considered relevant in determining whether the § 1322(b)(2) exception applies' ").

7. Mr. Cupp was 53 years old in 1997 when he acquired the policy. The loan matures and the policy expires on April 7, 2004.

under § 506. Debtors have not submitted any arguments that persuade us to change our view as expressed in *Lewandowski* and, upon review of our rationale in that case, we find no reason to do so.[8]

There is one difference between this case and *Lewandowski* which should be noted. There was no credit life or disability insurance in *Lewandowski*. Thus, we did not examine what, if any, interest the estate had in the insurance policy or proceeds. Here, the estate has no interest in proceeds as they have been absolutely assigned to the lender. As to the prepaid premium, however, the policy provides for a refund to Mr. Cupp of any unearned premium if certain events occur, such as prepayment of the balance on the note before its maturity. Thus, the estate has an interest in any refund of unearned premiums if the loan is paid off early. Debtors did not convey a security interest in the potential refund to Associates. Associates has no entitlement whatsoever to the premiums and, therefore, no "interest in the estate's interest in" the premiums. Thus, § 506(a) does not apply and Associates' lien cannot be stripped down.

An appropriate order will be entered.

8. *Lewandowski* is on appeal to the District Court for the Western District of Pennsylvania. *See* CA 98–1016.