**In re Jason Lane PEDIGO, Misty Ann Pedigo, Debtors.**

No. 01–13113.

United States Bankruptcy Court,
E.D. Tennessee,
Winchester Division.

Sept. 23, 2002.

Keith S. Smartt, McMinnville, Tennessee, for debtors.

Jerre M. Hood, Winchester, Tennessee, for Citifinancial.

## MEMORANDUM OPINION

R. THOMAS STINNETT, Bankruptcy Judge.

Citifinancial objected to confirmation of the debtors' chapter 13 plan on two grounds: (1) the proposed cram-down of Citifinancial's second mortgage claim is barred by the home mortgage exception; (2) the plan was not proposed in good faith. 11 U.S.C. § 1325(a)(3), (a)(5)(B) & § 1322(b)(2). Citifinancial's claims are actually secured by deeds of trust, but for convenience the court will refer to them as mortgages.

Citifinancial's bad faith objection depends on its objection under the home mortgage exception. The theory is that the debtors must have proposed the plan in bad faith because the plan obviously violates the home mortgage exception. Citifinancial did not present any separate evidence of bad faith. 11 U.S.C. § 1325(a)(1), (a)(3).

This bad faith argument will fail if the law provides some support for the plan's proposed cram-down of Citifinancial's second mortgage claim. This brings the court back to Citifinancial's main objection that the home mortgage exception protects its second mortgage claim from the proposed cram-down.

Cram-down works best for a debtor when the value of the collateral is considerably less than the debt. The debtor can keep the collateral without paying the total amount of the debt. In a chapter 13 plan, the debtor is required to pay only the present value of the collateral plus interest to make up for the delay in payment. 11 U.S.C. § 506(a) & § 1325(a)(5)(B); 2 Keith M. Lundin, *Chapter 13 Bankruptcy* § 104.1 (referring to "smoothdown"). Even with the interest, the installment payments required for a cram-down may total much less than the amount of the debt.

The purpose of the home mortgage exception is to prevent cram-down of a claim that comes within the exception. What kind of claim comes within the home mortgage exception? The exception provides that a plan cannot modify the rights of the

holder of a claim "secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2).

The second mortgage claim of Citifinancial is $11,554. The debtors originally proposed a secured value of only $2,300, payable at $46.64 per month including 8% interest. Citifinancial did not object to the proposed interest rate. The debtors now concede that the value of their property is $60,400. The first mortgage on their property is $55,386.45, including an arrearage claim of $1,548.48. At the hearing, the debtors orally modified their plan so as to include the second mortgage with a secured value of $5,013.55, payable at $102 per month including 8% interest. The plan as modified becomes the plan. 11 U.S.C. § 1323.

■ The debtors executed a promissory note when they obtained the loan and executed the second mortgage to secure the note. But the promissory note is more than just a note. It is a combined note and security agreement. The security agreement must be considered in determining whether the home mortgage exception applies. The court cannot treat the claim as two claims, one secured only by the mortgage and another secured only by the security agreement. *See, e.g., In re Larios,* 259 B.R. 675 (Bankr.N.D.Ill.2001); *In re Braylock,* 120 B.R. 61 (Bankr. N.D.Miss.1990); *In re DeMoss,* 59 B.R. 90 (Bankr.W.D.La.1986).

■ If the court includes the "secured" requirement, the home mortgage exception has five requirements:

(1) The claim is "secured" as that term is used in the statute.

(2) The claim is secured by a "security interest" as defined in the bankruptcy code.

(3) The security interest is in the debtor's principal residence.

(4) The debtor's principal residence is real property.

(5) The claim is not secured by any other collateral.

The debtors have conceded the first requirement—that the claim is secured. The second, third, and fourth requirements are undisputed. The second mortgage creates a security interest. 11 U.S.C. § 101(36), (37), (51), (53). The security interest is in the debtors' principal residence. The debtors' principal residence is real property.

The court need not be concerned with whether the security agreement also created a security interest in the debtors' home. The security agreement and the mortgage both secure the second mortgage claim. If either creates a security interest in the debtors' home, the home mortgage exception may apply.

The dispute between Citifinancial and the debtors concerns the fifth requirement. The claim must be secured *only* by a security interest in the debtors' principal residence. The debtors contend the second mortgage claim is secured by other collateral—credit life insurance, credit disability insurance, and the unearned premiums. The court of appeals for this circuit has held that hazard insurance on the debtor's home does not prevent the home mortgage exception from applying, but the court specifically left open the question of whether credit life or credit disability insurance would be additional collateral. *Allied Credit Corp. v. Davis (In re Davis),* 989 F.2d 208, 212 (6th Cir.1993).

The debtors purchased the credit life and disability insurance at Citifinancial when they obtained the loan. The document in the record is actually a certificate of insurance. It identifies itself as a certif-

icate of insurance because, as stated in the preamble, the debtors became insured under a group policy issued to Citifinancial. Nevertheless, the court will refer to the certificate as the insurance policy.

What does it mean to be "secured" by something other than the debtors' principal residence? Suppose a friend of the debtors guaranteed the debt. Would that prevent the home mortgage exception from applying because the claim is secured by the guaranty?

■ No. Being "secured" in a bankruptcy case means having a lien, and a lien is a charge against or an interest in property. 11 U.S.C. § 506 & § 101(36), (37), (51), (53); *see Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993); *Cupp v. Associates Consumer Discount Co. (In re Cupp)*, 229 B.R. 662 (Bankr.W.D.Pa.1999); *In re Surber*, 211 B.R. 17 (Bankr.N.D.Ohio 1997). A guaranty by itself does not give the creditor any charge against or interest in property to secure payment of the debt. It is simply a promise by someone other than the debtor to pay the debt if the debtor fails to pay it. A simple guaranty does not make a creditor "secured" in a bankruptcy case. *In re Hemsing*, 75 B.R. 689 (Bankr.D.Mont.1987); *In re Fox*, 64 B.R. 148 (Bankr.N.D.Ohio 1986).

■ If Citifinancial has a lien on the insurance, the lien must have been created by one of the agreements or a combination of agreements. The bankruptcy code defines different kinds of liens. A lien created by agreement is a "security interest." 11 U.S.C. § 101(51). Thus, the question is whether Citifinancial has a security interest as defined in the bankruptcy code. Combining the bankruptcy code's definitions of lien and security interest reveals the complete definition of a security interest. When an agreement creates a charge against or an interest in property, and the

charge or interest secures payment of a debt, then the agreement creates a security interest. 11 U.S.C. § 101(36), (37), (51), (53).

A person who buys life insurance on his own life is the owner of the policy and can assign the policy to secure a debt. The creditor would then have a claim to the proceeds up to the amount of the secured debt. Tenn.Code Ann. § 56–7–204; *Central State Bank v. Edwards*, 21 Tenn.App. 418, 111 S.W.2d 873 (1937); *Third Nat. Bank v. Hall*, 30 Tenn.App. 586, 209 S.W.2d 46 (1947); 3 *Couch on Insurance* § 37:61 (3d ed.1995).

■ Generally the owner of the policy can assign the insurance, including the right to the proceeds, as security for a debt only if he has the right to change the beneficiary or the policy allows assignment even though the beneficiary cannot be changed. *Elledge v. Sumpter*, 140 Tenn. 11, 203 S.W. 346 (1918); *F.E. Fisher & Co. v. Phoenix Mutual Life Ins. Co.*, 15 Tenn. App. 502 (1932); 3 *Couch on Insurance* § 37:45 (3d ed.1995); 43 Am.Jur.2d, Insurance § 794 (1982).

■ The assignment of life insurance to secure a debt may create a security interest in the insurance within the bankruptcy code's definition of security interest. The assignment gives the creditor a charge against or an interest in the debtor's and the beneficiary's rights under the insurance policy for the purpose of securing the debtor's debt to the creditor. *See Englander v. First Union National Bank (In re Englander)*, 202 B.R. 326 (Bankr. M.D.Fla.1995); *In re Smith*, 167 B.R. 895 (Bankr.E.D.Mo.1994).

The purchase of credit life insurance has almost the same effect as the assignment of regular life insurance to the creditor. The debtor is out the premium, and the

creditor is protected by the life insurance. This similarity leads to the argument that the situation is the same: the debtors bought property—the credit life insurance—and assigned it to Citifinancial to secure the debt.

The purpose of a credit life policy is to pay the debt if the debtor dies before the debt is paid and while the policy is still in effect. For example, the debtors' credit life policy provides for payment of the death benefit to Citifinancial. The policy also provides for a reducing benefit; instead of paying a fixed amount, it pays the balance of the debt (excluding unearned finance charges).

The debtors paid for the insurance company's promise to pay the death benefit to Citifinancial. Citifinancial had a right to collect the death benefit without regard to whether the debtors granted it a security interest in the insurance or assigned their rights in the insurance to secure the debt. Cf. Harrell v. Minnesota Mutual Life Ins. Co., 937 S.W.2d 809 (Tenn.1996) (suit by beneficiary); Estate of Wilson v. Arlington Auto Sales, Inc., 743 S.W.2d 923 (Tenn. App.1987) (suit by beneficiary). The surviving debtor, the representative of the deceased debtor, or both should have the right to sue the insurance company if it wrongfully refuses to pay the death benefit to Citifinancial. But none of the relevant agreements transferred this right to Citifinancial as collateral for the debt. No such transfer was needed for Citifinancial to be protected by the right to the death benefit. In summary, Citifinancial's right to the death benefit and the insurance company's promise to pay it are not property in which the debtors granted Citifinancial a security interest. Cupp v. Associates Consumer Discount Co. (In re Cupp), 229 B.R. 662 (Bankr.W.D.Pa.1999).

In this regard, the credit life policy is similar to a payment bond or guaranty for the benefit of one creditor. A guaranty or a payment bond is not property subject to the beneficiary's security interest. It is not collateral that makes the beneficiary's claim "secured" for bankruptcy purposes. In re Hemsing, 75 B.R. 689 (Bankr. D.Mont.1987); In re Fox, 64 B.R. 148 (Bankr.N.D.Ohio 1986); see also Prime Construction Co., Inc. v. Seattle–First National Bank, 16 Wash.App. 674, 558 P.2d 274, 21 UCC Rep.Serv. 284 (1977) (payment bond claims not liens on property).

The insurance policy provides that any surplus benefit after paying Citifinancial will be paid to the secondary beneficiary designated by the debtor. The policy designates each debtor's estate as the secondary beneficiary. The possible existence of a surplus benefit and the debtors' right to select the beneficiary do not change the court's reasoning. Citifinancial still did not obtain its right to the death or disability benefit by the creation of a security interest or the assignment of the debtors' rights in the insurance to secure the debt.

The court concludes that Citifinancial's right to the death benefit is not a security interest in the insurance or the result of having obtained a security interest in the insurance. It does not prevent the second mortgage claim from being protected by the home mortgage exception. Cupp v. Associates Consumer Discount Co. (In re Cupp), 229 B.R. 662 (Bankr.W.D.Pa.1999); RTC v. Washington (In re Washington), 967 F.2d 173 (5th Cir.1992); United Companies Financial Corp. v. Davis, 148 B.R. 16 (W.D.La.1992); In re Surber, 211 B.R. 17 (Bankr.N.D.Ohio 1997); In re Amerson, 143 B.R. 413 (Bankr.S.D.Miss.1992); In re Braylock, 120 B.R. 61 (Bankr.N.D.Miss. 1990). The court respectfully disagrees with the decision in Transouth Financial Corp. v. Hill, 106 B.R. 145 (W.D.Tenn. 1989).

The same reasoning applies with regard to the credit disability insurance. The disability benefit is payable to Citifinancial to reduce the debt. The insurance company's promise to pay is not a security interest in property. Citifinancial did not obtain the promise to pay by transfer of the debtors' rights. Citifinancial's right to the disability benefit does not prevent the home mortgage exception from applying.

Other courts have considered other factors with regard to whether a credit life policy is separate collateral from the principal residence. The court in *Washington* considered (1) whether the creditor required the insurance, (2) whether documents other than the insurance policy pledged the insurance as additional collateral, and (3) whether the insurance policy itself provided for assignment to the creditor or contained other language creating a security interest in the insurance. *RTC v. Washington (In re Washington)*, 967 F.2d 173, 176 (5th Cir.1992); *accord United Companies Financial Corp. v. Davis*, 148 B.R. 16 (W.D.La.1992); *In re Surber*, 211 B.R. 17 (Bankr.N.D.Ohio 1997).

With regard to the death benefit or the disability benefit, all the stated factors favor Citifinancial. The insurance was not required, and none of the documents provide for a transfer or assignment of the insurance, particularly the death or disability benefit, as collateral for the debt.

■ As to unearned premiums, however, the factors are not so clearly in Citifinancial's favor. The insurance was not required, but the legal effect of the agreements may be different with regard to the unearned premiums than with regard to the death and disability benefits.

The insurance policy provides:

REFUND OF PREMIUM: If the insurance is terminated prior to the original scheduled Expiration Date, the unearned portion of the prepaid premium will be refunded to you and/or credited to your account.....

As to termination of the insurance, the policy provides:

TERMINATION OF INSURANCE: This insurance automatically terminates on the earliest of the following dates: 1) when you request cancellation of the insurance; 2) when the loan is paid off early, renewed or refinanced; 3) on the original scheduled maturity date of your loan; 4) upon repossession of the collateral given as security for the loan or by the loan or any portion of it being charged off or required to be charged off by law; or 5) the Expiration Date shown in the Schedule.

The security agreement also contains provisions regarding early termination and the unearned premium:

*Termination of Insurance:* Borrower may cancel any of the optional insurance products obtained at Lender's office at any time.... Borrower authorizes the insurer for any and/or all optional insurance products to terminate such policies or coverages upon request of Lender. If any insurance purchased at Lender's office is terminated for any reason, Borrower authorizes and directs that the insurer deliver the premium refund, if any, to the Lender which may at its option apply it to the unpaid balance of the loan or return it to Borrower. Any such application of premium refund will not affect the amount or due date of subsequent payments on the loan, but may reduce the number of such payments.

Generally, the right to an unearned premium belongs to the person who paid it. 2 *Couch on Ins.* § 32:56 (3rd ed.1995). The loan included the full amount of the premium for each coverage. The debtors borrowed the money when they obtained the

loan and used it to pay the premiums. Thus, the debtors paid the premium and would be entitled to any unearned premium under the general rule. The policy agrees with this result. It provides for refund of any unearned premium to "you", which means the debtors, as stated in the preamble.

The court is not certain what the policy means when it states that the unearned premium may be credited to the debtors' account. It could mean the debtors' account with the insurance company if they have other insurance with the company. It could mean the debtors' debt to Citifinancial, but the policy generally refers to the debt or the creditor when that is what it means. Even if this provision does allow the insurance company to pay the unearned premium to Citifinancial, it does not change the basic rule of the policy that the unearned premium is owed to the debtors. In other words, even if the insurance company could pay the unearned premium to Citifinancial, that would not make Citifinancial the owner of the right to the unearned premium. The insurance policy makes the debtors the owners of the right to any unearned premium.

This leads the court to conclude that the effect of the insurance policy is not the same for the unearned premiums as it is for the death benefit and the disability benefit. Citifinancial's right to the death benefit or the disability benefit was not acquired by transfer from the debtors of their rights under the policy. On the other hand, the insurance policy makes the debtors the owners of the right to the unearned premium, and Citifinancial could have obtained that right as collateral for the debt only by transfer from the debtors.

The security agreement is consistent with this reasoning. It authorizes the insurance company to pay the unearned premium to Citifinancial. Citifinancial can pay the unearned premium to the debtors or apply it to their debt. The option of paying the unearned premium to the debtors recognizes their ownership of the right to the unearned premium. The option of applying the unearned premium to the debt gives Citifinancial a charge against or an interest in the debtors' property—the right to the unearned premium—to secure their debt to Citifinancial.

This conclusion is reinforced by other provisions. The insurance policy automatically terminates if the collateral is repossessed. If automatic termination results in unearned premium, then the security agreement directs the insurance company to pay the unearned premium to Citifinancial. The security agreement also allows Citifinancial to cancel the insurance. This gives Citifinancial a method of foreclosing on the collateral, the debtors' right to the unearned premium, if the debtors default.

■ An agreement can create a security interest without using the words "security interest" or any similar words. It creates a security interest if it gives the creditor a charge against or an interest in property to secure a debt. The insurance policy and security agreement accomplish that purpose as to the unearned premium. They establish the debtors' right to the unearned premium, and then grant Citifinancial the right to collect the debt by taking the unearned premium ahead of the debtors. The court concludes that the agreements grant Citifinancial a security interest in the debtors' right to the unearned premium to secure their debt to Citifinancial.

■ Citifinancial has not argued that failure to give notice to the insurance company prevented creation of a security interest in the unearned premium. The court might assume the insurance company received notice of Citifinancial's claim—

in light of the relationship between Citifinancial and the insurance company and the nature of the insurance. But the court need not make that assumption. Lack of notice to the insurance company may protect it from having to pay twice and may allow other creditors to establish claims to the unearned premium with priority over Citifinancial's security interest. Tenn. Code Ann. § 56–7–204(b)(2); *In re Expressco, Inc.,* 99 B.R. 395 (Bankr. M.D.Tenn.1989). But failure to give notice did not prevent Citifinancial from acquiring a security interest in the unearned premium when the security agreement was executed.

█ Furthermore, perfection of a creditor's security interest against third parties is not required for the creditor to be "secured" as that term is used in the home mortgage exception. 11 U.S.C. § 1322(b)(2); *Stewart v. U.S. Bank (In re Stewart),* 263 B.R. 728 (Bankr.W.D.Pa. 2001); *In re Larios,* 259 B.R. 675 (Bankr. N.D.Ill.2001); *In re Graham,* 144 B.R. 80 (Bankr.N.D.Ind.1992).

Citifinancial has not argued that the unearned premium did not have any value when the debtors filed their chapter 13 case. The separate premiums for credit life and credit disability totaled about $2,900. Citifinancial added the total to the loan when it was made. Citifinancial probably received payment on behalf of the insurance company at the time of the loan or shortly afterward. The court has no reason to doubt the total premium for each coverage was actually paid about the time the loan was made.

The premium would be earned during the term. The debtors obtained the loan and bought the insurance in September 2000. The credit life has a term of seven years that ends in October 2007. The credit disability has a five year term that ends in September 2005. The policy provides for calculating the earned and unearned premium according to the rule of 78's. This may result in more of the premium being earned early in the term, but it should not result in all of the premium being earned within two years after the coverage began. The debtors filed their chapter 13 case in May 2001, less than a year after the policy was issued. There should have been unearned premium when the debtors filed their chapter 13 case, and there should be unearned premium now. 2 Keith M. Lundin, *Chapter 13 Bankruptcy* §§ 121.1–121.2 (as to the time of determining what collateral secures the debt).

In this regard, Citifinancial also has not argued or presented any evidence that events after execution of the insurance policy have made the right to the unearned premium worthless.

The security agreement gives Citifinancial the right to terminate the policy and obtain the unearned premium. The debtors' chapter 13 case has stopped Citifinancial from terminating the policy and collecting the unearned premium. 11 U.S.C. § 362(a). The situation is the same as it would be for a creditor with tangible collateral, such as a car or a house. The collateral exists and is available, but the chapter 13 case prevents the creditor from collecting. Citifinancial may yet obtain the unearned premium if the debtors' chapter 13 case fails before all the premium is earned. The right to unearned premiums is property that has value to Citifinancial as a source for collection of the debt. *Compare In re Grant,* 242 B.R. 800 (Bankr.D.N.H.1999).

█ The home mortgage exception applies when the additional collateral is merely incidental to or arises out of the debtors' ownership of their home. *Compare PNC Mortgage Co. v. Dicks,* 199 B.R. 674 (N.D.Ind.1996); *Rodriguez v. Mellon*

*Bank (In re Rodriguez)*, 218 B.R. 764 (Bankr.E.D.Pa.1998). But the right to the unearned premium does not fit into either of those categories.

One final argument is that the unearned premium should be ignored as *de minimis* or insignificant collateral. It certainly was not *de minimis* or insignificant when the loan was made. The total premium, $2,900, was about one-fourth of the amount financed. The court has no evidence to support the conclusion that the amount of the unearned premium is *de minimis* or insignificant at the moment (assuming such a conclusion would make a difference).

The court has found few helpful cases dealing with whether the right to the unearned premium on credit life or credit disability insurance is additional collateral that prevents a claim from being protected by the home mortgage exception. Three courts have decided that agreements similar to those in this case failed to create a security interest in the unearned premium. *Cupp v. Associates Consumer Discount Co. (In re Cupp)*, 229 B.R. 662 (Bankr. W.D.Pa.1999); *In re Surber*, 211 B.R. 17 (Bankr.N.D.Ohio 1997); *Wright v. C & S Family Credit, Inc. (In re Wright)*, 128 B.R. 838 (Bankr.N.D.Ga.1991). The *Wilson* case seemed to hold that both the insurance and the unearned premium were additional collateral. *In re Wilson*, 91 B.R. 74 (Bankr.W.D.Mo.1988). Other courts have held that the insurance is not additional collateral, and in the process, they have distinguished *Wilson* on the ground that it also involved a security interest in the unearned premium. *In re Amerson*, 143 B.R. 413 (Bankr.S.D.Miss. 1992); *In re Braylock*, 120 B.R. 61 (Bankr. N.D.Miss.1990).

In cases not involving the home mortgage exception, the courts have recognized that a creditor's right to unearned premi-um is a security interest. *In re Megamarket of Lexington, Inc.*, 207 B.R. 527 (Bankr.E.D.Ky.1997) (premium refund abandoned to creditor); *In re Expressco, Inc.*, 99 B.R. 395 (Bankr.M.D.Tenn.1989) (perfection question prevented stay relief); *In re Double Eagle Constr., Inc.*, 188 B.R. 406 (Bankr.W.D.Mo.1995) (requirements for perfection); *In re Grant*, 242 B.R. 800 (Bankr.D.N.H.1999) (no security interest without creditor's power to terminate policy).

The court concludes that Citifinancial's right to collect the debt from the unearned premium is a security interest in collateral other than the debtors' principal residence. It follows that the home mortgage exception does not prevent cram-down of the second mortgage claim. Citifinancial's objection to confirmation on that ground will be denied.

The bad faith objection to confirmation must also be denied. Even if the debtors had not prevailed on the question of whether the home mortgage exception applies, the law gave ample support to their argument that the exception did not apply. Therefore, the cram-down was not proposed in bad faith.

The court will enter an order in accordance with this memorandum opinion.

This Memorandum constitutes findings of fact and conclusions of law as required by *Fed.R.Bankr.P.* 7052.